UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


ERVIN KING                                                    CIVIL ACTION

VERSUS                                                        NO. 12-752-SDD-RLB

COMMISSIONER OF
THE SOCIAL SECURITY
ADMINISTRATION


### NOTICE

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

    In accordance with 28 U.S.C. § 636(b)(1)(C), you have **14 days** from date of receipt of this notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report.  A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

    **ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

    Signed in Baton Rouge, Louisiana, on February 13, 2014.

                                                                            _____
                                                                            RICHARD L. BOURGEOIS, JR.
                                                                            UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ERVIN KING** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-752-SDD-RLB** |
| **COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION** | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Ervin King ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for a period of disability and disability insurance benefits (DIB) "under Title II and Part A of Title XVIII of the Social Security Act" (Tr. 144) and supplemental social security income (SSI) "under Title XVI of the Social Security Act." (Tr. 151).[1] For the reasons assigned below, the Court recommends the decision of the Commissioner be **AFFIRMED** and Plaintiff's Appeal **DISMISSED with prejudice**.

I.  PROCEDURAL HISTORY

On January 25, 2010 Plaintiff filed applications for disability insurance benefits (Tr. 12, 70, 144-45) and supplemental security income benefits (Tr. 12, 71, 151-54) alleging disability as of December 1, 2008 (Tr. 144, 151) based on: "back problems, deteriorating disks, and hepatitis C, depression and anxiety" (Tr. 12, 91, 95). Plaintiff's applications were initially denied (DIB, Tr. 91-94, 99); (SSI, Tr. 95-98, 99) on December 10, 2010 because the Commissioner found

---

[1] References to documents filed in this case are designated by "(R. Doc. [docket entry number(s)] at [page number(s)])". Reference to the record of administrative proceedings filed in this case is designated by "(Tr. [page number(s)])".

1

Plaintiff had a severe impairment — "DDD (Disorders of Back—Discogenic and Degenerative)" — (Tr. 59, 66) and non-severe impairments — affective and anxiety disorders — (Tr. 59, 66) but together they were not disabling (Tr. 61, 68). Plaintiff then filed a timely request for a hearing (Tr. 103) before an Administrative Law Judge (ALJ) on February 1, 2011.

The hearing took place on August 30, 2011 (Tr. 25-55); Plaintiff, represented by counsel (Tr. 25, 28) appeared and testified (Tr. 36, 44-51). Mr. Thomas G. Mungall, a vocational expert (VE) (Tr. 51-55), Dr. Tommy Stigall, psychiatric medical expert (Tr. 29-35), and Dr. George R. Smith, surgical medical expert (Tr. 35-44), also testified at the hearing. The ALJ rendered an unfavorable decision (Tr. 12-20) on behalf of the Commissioner on October 28, 2011 (Tr. 9-11), finding Plaintiff had "not been under a disability . . . from December 1, 2008, through the date of [the] decision" (Tr. 12). Plaintiff's request for review (Tr. 7) was denied by the Appeals Council on October 4, 2012. (Tr. 1-3). The ALJ's decision rested as the final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . ."). The ALJ's final decision is now ripe for review under 42 U.S.C. § 405(g).

## II.     STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a

2

conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g.*, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

3

**III.     ALJ'S DETERMINATION**

The Commissioner, through the ALJ, works through a five-step sequential evaluation process to determine disability.  *See* 20 C.F.R. § 404.1520(a)(4).  The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability.  If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process).  First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c).  At step three the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments).  Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work.  20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work.  20 C.F.R § 404.1520(g)(1).  If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ initially found Plaintiff met the insured status requirements of the Act through June 30, 2010 (Tr. 14, 91) and had not engaged in substantial gainful activity since the

4

alleged onset of December 1, 2008 (Tr. 14).  At step 2, the ALJ determined Plaintiff's degenerative disc disease, hepatitis C and anxiety disorders qualified as severe impairments. (Tr. 14).  Proceeding to step 3, the ALJ found Plaintiff's impairments did not meet or medically equal a Listing (Tr. 14) — Listings 1.04 (Disorders of the Spine), 12.04 (Affective Disorders), 12.06 (Anxiety Related Disorders) and 12.09 (Substance Addiction Disorders), in particular (Tr. 15). Between steps 3 and 4, the ALJ considered the "entire record" and found Plaintiff had the residual functional capacity (RFC) to perform light work with certain restrictions: (1) "stand/walk and sit with normal break;" (2) "occasionally balance;" (3) "no climbing of ladders, ropes or scaffolds;" (4) "no work at unprotected heights or around dangerous moving machinery;" and (5) "limited to detailed relative complex work." (Tr. 16-18).  Proceeding to step 4, Plaintiff was found incapable of performing his past relevant work as a carpenter. (Tr. 18, 46). Guided by the VE's testimony and the Medical Vocational Guidelines (GRIDS), the ALJ determined that jobs existed in the national economy that Plaintiff could perform. (Tr. 19). Specifically, Plaintiff had the functional ability to work as a file clerk and an information clerk. (Tr. 19, 53).  Ultimately, the ALJ held Plaintiff had not "been under a disability . . . from December 1, 2008, through the date of [the] decision." (Tr. 20).

### IV. ASSIGNMENTS OF ERROR

Plaintiff first argues the ALJ violated the treating source rule. (R. Doc. 10-2 at 12-15). According to Plaintiff, the ALJ failed to assign weight to the opinion of his treating physician, Dr. Harry Kean Day, Jr. (Tr. 322-331), and never weighed Dr. Day's opinion according to the Regulations. (R. Doc. 10-2 at 12-15) (citing 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6)). This legal analysis violated *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000)).  Regardless of any legal error, Plaintiff also suggests that substantial evidence does not support the decision to

5

discount Dr. Day's opinion. (R. Doc. 10-2 at 13-15).  Next, Plaintiff argues the ALJ did not properly consider his credibility. (R. Doc. 10-2 at 16-19).  Plaintiff contends the ALJ "reversed the appropriate legal standard for evaluating a claimant's credibility" by comparing his allegations to the ALJ's RFC and not the medical evidence. (R. Doc. 10-2 at 16-17).  Alternatively, the credibility finding is not supported by substantial evidence. (R. Doc. 10-2 at 18).

## V.     DISCUSSION

### A.     Treating Source Rule

Plaintiff suggests the ALJ failed to disclose what weight, if any, was given to his treating physician, Dr. Harry Kean Day, Jr., and failed to consider Dr. Day's opinion according to the Regulations.  Generally, the "opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *see also* 20 C.F.R. § 404.1527(c)(1) (examining physician opinion given more weight than non-examining physician). "Absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in" the Regulations. *Newton*, 209 F.3d at 453 (citing 20 C.F.R. § 404.1527(d)(2) (current version at 20 C.F.R. § 404.1527(c)(2)-(6) (2012))).[2]  However, the ALJ is not required to consider each of the six factors set out in *Newton* when "there is competing first-hand medical evidence . . . ." *Walker v. Barnhart*, 158 F. App'x. 534, 535 (5th Cir. 2005) (quoting *Newton*, 209 F.3d at 458).

---

[2] Those criteria provide that the ALJ consider: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the relevant evidence supporting the opinion; (4) consistency of the treating physician's opinion with the record as a whole; (5) whether the opinion is that of a specialist; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6).

When the record contains medical evidence from multiple treating sources, the ALJ is "not required to go through all six steps in *Newton*" because "the ALJ is responsible for resolving conflicts in the evidence, and we will not substitute our judgment for his." *Cain v. Barnhart*, 193 F. App'x. 357, 360 (5th Cir. 2006) (citing *Newton*, 209 F.3d at 452, 458; *Walker*, 158 F. App'x at 534).

The Court has reviewed the decision and finds no support for Plaintiff's contentions. As an initial matter, *Newton* and its required "detailed analysis" do not apply to Plaintiff's case because the record contains competing first-hand medical evidence from other treating and examining sources. And so, Plaintiff incorrectly suggests the ALJ was required to analyze Day's opinion using the 6 factors described in *Newton* and 20 C.F.R. § 404.1527(c)(2)-(6). *See Walker*, 158 F. App'x at 535.[3] Second, the ALJ not only stated that he discredited the opinion, he went beyond what was legally required by specifying the discredited portions of Day's opinion and providing detailed reasons for each, including contradictory record evidence. (Tr. 18). Specifically, the ALJ discredited: (1) the exertional limitations imposed by Day (Tr. 18, 325-28); (2) Day's opinion that the November 1, 2010 Cervical and Shoulder MRI's supported Day's finding (Tr. 18, 325); and (3) Day's opinion that Plaintiff's lower back pain had worsened since surgery (Tr. 18, 328). The ALJ gave a detailed overview of all the medical records from Plaintiff's treating physicians, including Dr. Day. (Tr. 15-18). The ALJ also called two medical experts to review the medical evidence and testify at the hearing and considered their opinions, as well. (Tr. 15, 29-44). Considering the ALJ did assign weight to the opinion by specifically

---

[3] The Government correctly points out that "the ALJ narratively discussed a majority of the section 404.1527(c) factors" when considering Dr. Day's records even though the analysis was not required under *Newton*. (R. Doc. 13 at 8). Of the 6 factors, the ALJ considered the (1) length and frequency of treatment, (2) nature and extent of treatment, (3) supportability of Day's findings, (4) consistency of Day's opinion with the record, and (5) other factors tending to support or contradict the opinion (Tr. 18). *See Newton*, 209 F.3d at 453 (citing 20 C.F.R. § 404.1527(c)(2)-(6)). This further supports the ALJ's decision to discredit portions of Dr. Day's opinion.

indicating which portions he discredited and why, there is no merit to Plaintiff's argument that the ALJ violated *Newton*. As such, no legal error occurred.

Second, the ALJ's decision to discredit these portions of Dr. Day's opinion is supported by substantial evidence. As the ALJ indicated, the record shows various degrees of improvement in symptoms post-surgery. (Tr. 224, 226, 232, 238, 259). Moreover, the 2010 MRI results mentioned by Day indicated Plaintiff's "[c]ervical cord is grossly normal" (Tr. 313) and noted mostly mild with some moderate findings of degenerative disc disease (Tr. 313). The "lumbar spine is normal" aside from the previous "[i]nterbody fusion of L5 to S1" (Tr. 316) and the "[d]isc configurations at 12-1, 1-2, 2-3, 3-4" and "4-5 disc[s]" were "unremarkable" (Tr. 317). As the ALJ explained, these most recent test results were not conducted by Dr. Day and indicated Plaintiff's limitations were less severe than Day opined. (Tr. 18). The ALJ further relied on two medical experts at the hearing to discuss the medical evidence and explain any confusion or contradictions. (Tr. 29-44). Ultimately, "the ALJ is responsible for resolving conflicts in the evidence, and we will not substitute our judgment for his." *Cain*, 193 F. App'x. at 360. As such, substantial evidence supports the ALJ's detailed and considerate opinion, placing remand outside the appropriate exercise of the Court's authority on review.

### B.   Credibility

The Administration requires the decision to "contain specific reasons for the finding on credibility, supported by the evidence in the case record." SSR 96-7P, 1996 WL 374186, at *4 (July 2, 1996). At the same time, "[p]rocedural perfection in administrative proceedings is not required" and remand will not be warranted "unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Failing to articulate specific reasons for discounting a claimant's credibility obviously results in some error. Nonetheless,

8

that error is harmless where (1) the ALJ discusses the claimant's allegations and (2) substantial record evidence supports the credibility determination. *See, e.g.*, *Haywood v. Sullivan*, 888 F.2d 1463, 1469-70 (5th Cir. 1989) (failure to explain credibility findings was harmless error where decision summarized claimant's testimony and objective medical evidence and substantial evidence supported finding); *Story v. Astrue*, 294 F. App'x 883, 884 (5th Cir. 2008) (ALJ's consideration of subjective testimony "satisfied his obligation" to make specific credibility findings); *Salgado v. Astrue*, 271 F. App'x 456, 462-63 (5th Cir. 2008) (ALJ's previous discussion of claimant's allegations provided sufficient reasons for otherwise conclusory credibility finding).

Plaintiff takes great offense with the ALJ's use of what he describes as "template language" in his credibility and RFC analyses. (R. Doc. 1- at 17-18). Plaintiff, in particular, refers to the following: "After careful consideration of the evidence, the undersigned finds that . . . the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 17). Plaintiff urges the use of this language resulted in reversible error because it precluded the ALJ from making specific credibility findings. A review of the ALJ's decision and Plaintiff's own Memorandum, however, belie this argument.

After suggesting the ALJ committed reversible error by using template language and failed to make specific credibility findings, Plaintiff proceeds to acknowledge and discuss specific credibility findings and the reasoning of the ALJ. (R. Doc. 10-2 at 18). This contradicts Plaintiff's contention that the ALJ failed to offer specific findings or any reasons for discrediting his testimony. Moreover, the Court acknowledges the ALJ's use of template language and concedes that that language, without any further discussion of Plaintiff's credibility, could be

9

insufficient.  However, that is not the case here and the Court will not remand an otherwise thorough opinion because it incorporates template language.  For these reasons, the Court finds no legal error in the ALJ's decision.

Plaintiff takes issue with one of the ALJ's specific findings that Plaintiff's medication did caused side effects but, alone, they were not disabling. (R. Doc. 10-2 at 18; Tr. 17-18).  Plaintiff suggests this finding is irrelevant and insufficient to be substantial evidence because Plaintiff "never alleged he was disabled due to his medication side-effects, but instead because of his severe pain and resulting limitations." (R. Doc. 10-2 at 18).  According to Plaintiff, "the ALJ was required to consider the combination of all the claimant's limitations, not simply his fatigue related to his medications . . . ." (R. Doc. 10-2 at 18).  A reading of the ALJ's opinion, however, in combination with this particular finding, does not suggest the ALJ discredited Plaintiff based solely on his medication's non-disabling side effects.

Instead, the ALJ fully discussed the entirety of Plaintiff's testimony and the medical evidence of record in assessing his credibility; the discussion was not limited to her medication's side effects.  (Tr. 15-18).  Moreover, the majority of record evidence relating to Plaintiff's alleged side effects comes from Plaintiff's testimony (Tr. 51), the testimony of medical expert, Dr. Robert Smith (Tr. 43-44) and Dr. Day (Tr. 326, 328).  First, Dr. Day's opinion, which was appropriately discredited by the ALJ, listed Plaintiff's alleged side effects (Tr. 328) but also stated "multiple meds make work as carpenter unsafe" (Tr. 326).  This does little to demonstrate that the ALJ's credibility finding is contradicted by the record, because the ALJ found Plaintiff incapable of performing his past relevant work as a carpenter. (Tr. 18).  Next, medical expert Dr. Smith provided a more generalized discussion of the side effects typically caused by these medications — drowsiness and decreased concentration — without pointing to any specific

10

evidence of the medication's particular effects on Plaintiff. (Tr. 43-44) ("I would expect sedating [and concentration] effects from any of these . . . Some people are able to function quite well with these, although you kind of get accustomed to it. And I would expect it to have some effect. To what degree, I'm not certain."). Plaintiff also testified that his medications caused dizziness and affected his equilibrium. (Tr. 51). The ALJ's decision acknowledges the side effects commonly associated with Plaintiff's medications and incorporated his limited ability to balance into the RFC. (Tr. 15).

Plaintiff further argues the restrictions his impairments pose on his daily activities are inconsistent with the exertional limitations of light work. The ALJ explained that Plaintiff's daily activities included domestic tasks, taking public transportation, visiting with others, watching activities and managing his own financial affairs. (Tr. 15). Given these activities and the medical evidence, the ALJ determined Plaintiff was "more limited than the state agency" suggested because the evidence supported "moderate restrictions in activities in daily living." (Tr. 16). Plaintiff, however, suggests the finding is inadequate because it omits his testimony that he "primarily watches TV" and rarely grocery shops with his girlfriend because he could "cannot handle the long standing and walking." (Tr. 18, 46, 48). Plaintiff urges for remand because these limitations "cannot be equated with a conclusion that Mr. King can perform a range of light exertional work on a sustained basis as found by the ALJ." (R. Doc. 10-2 at 18-19). This argument is without merit.

Not only did the ALJ consider Plaintiff's inability to stand and walk for long periods of time, he incorporated it into his discussions with the medical experts (Tr. 40-41) and his hypotheticals posed to the vocational experts (Tr. 52) at the hearing and eventually into the RFC (Tr. 16), which accounted for Plaintiff's inability to stand and walk for long periods of time by

11

allowing him to take breaks and/or alternate positions every 30 minutes to an hour.  As both the ALJ and Plaintiff's attorney prompted the VE to clarify, Plaintiff's need to alternate positions is consistent with normal break schedules and was accounted for in the jobs — file clerk and information clerk — suggested by the VE. (Tr. 54-55) (clarifying that the jobs posed by the VE account for the need to alternate positions every thirty minutes to an hour).

Aside from his side effects and limited ability to stand and walk, Plaintiff offers no other evidence that might contradict the ALJ's credibility and RFC determinations.  The only two arguments advanced are contradicted by the decision and the record.  The ALJ also thoroughly discussed the record evidence and Plaintiff's testimony in forming his opinion.  And so, the Court finds the credibility and RFC findings are supported by substantial evidence.

## VI.   CONCLUSION

For the reasons discussed above, the Court **RECOMMENDS** that the ALJ's decision be **AFFIRMED** and Plaintiff's Appeal **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on February 13, 2014.

 ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲
**RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE**